The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is case number 4-22-0169. Madison County, Illinois on behalf of the county and the people of Madison versus Governor Pritzker and assorted intervenors on both sides. Would counsel for the appellant please state your name for the record. Your Honor, my name is Thomas Hain, H-A-I-N-E. I am the State's Attorney of Madison County. And you are joined by... Philip Lutkehans, L-U-E-T-K-E-H-A-N-S on behalf of Dan McConkie. And James Craney, C-R-A-N-E-Y on behalf of Amy Scholar and Christopher Threlkeld. And for the appellee, please state your name for the record or names. You're muted. Apologies. Good morning, Your Honors. My name is Adam Vaught. I represent intervening defendants Emmanuel Criswelch and Don Harmon. And I'm Assistant Attorney General Evan Siegel on behalf of Governor J.P. Pritzker. Thank you. You may proceed. Your Honors, may it please the court, good morning. My name is Thomas Hain. I represent Plaintiff Madison County in this appeal. I'll also be representing the arguments of the pro se plaintiff Wiley. This case, Your Honors, is about the General Assembly's complete elimination of all at-large circuit judgeships in Madison County for all purposes, election and retention. The Circuit Court erred in granting defendants motions to dismiss, but it also erred in concluding on the merits that the Judicial Redistricting Act of 2022, which I will refer to as the sub-circuit law, is constitutional. The Circuit Court reached that conclusion and it erred in that case as well. We're asking this court to reverse both those determinations and conclude that the sub-circuit law is, in fact, unconstitutional. First, quickly, I'd like to address two issues that we believe the Circuit Court got wrong, and those are jurisdiction and standing. As to jurisdiction, the Circuit Court clearly had it. At the time that it made its judgment, this was a declaratory judgment action. We asked the court to declare on the constitutionality of the Judicial Redistricting Act, the sub-circuit law, and jurisdiction for such cases lies in the Circuit Court. First, this routinely happens when laws are litigated in circuit courts relating to constitutionality, and electoral code is no different. And also, this is presumed by Supreme Court Rule 302, which, by requiring that an appeal be sent to the Supreme Court directly, implies and presumes that such cases will reside in the Circuit Court. So the Circuit Court had jurisdiction to hear this case. And then also standing. So, in this case, I'll discuss two individuals. First is the Pro Se Plaintiff. We think she very clearly has standing, just as the other individual plaintiffs in this case. The county is a separate analysis, but is also clear. Standing is a low bar. Counties can be injured, just like any other plaintiff. Counties routinely sue state actors, as we have here, Governor or the General Assembly. For example, there's a case, McHenry County, recently suing Kwame Raoul, the Attorney General, in the Northern District. That case was based on a claim that a state law was unconstitutional in various ways relating to the Supremacy Clause. And the courts didn't consider standing as an impediment to that case. The Governor's brief argues that the counties can never claim constitutional violations as against the state actors. But there's no basis for that sweeping claim. The site for that proposition, the City of Evanston, is only related to 14th Amendment and 5th Amendment claims. Of course, this is not that case. I have a question about your argument pertaining to retention. Yes, Your Honor. You argue that the statute is unconstitutional because it provides, in part, once a resident judge is assigned to a sub-circuit, it shall continue to be assigned to that sub-circuit for all purposes. Is that correct? Yes, Your Honor. And that's because you maintain that's inconsistent with the Illinois Constitution that requires that judges standing for retention must be elected circuit-wide? It must be retained circuit-wide. Well, my question is this. The statutory language talks about must be assigned to that sub-circuit for all purposes, but doesn't define what those purposes are. One of them could be once a person is elected and leaves office for whatever reason, that vacancy shall be filled with that sub-circuit. Yes, Your Honor. But it doesn't talk about retention at all. We'd have to be inferring that's included, wouldn't we not? Well, there's another piece to our argument, Your Honor, and that is the third circuit section of the sub-circuit law uses the unique phrase for all purposes. But it also takes out a phrase that is part of other circuits' descriptors, where other circuits in that same law very clearly state, quote, the judges shall run for retention from the circuit at large. That phrase is removed from the third circuit section. What does that mean? Why does that mean that we should infer something that would be clearly unconstitutional? That is the provision of Article 6, Section 12, Section D says retention elections shall be conducted at general elections in the appropriate judicial district and in the circuit for circuit judges. Yes, Your Honor. Maybe I should be more clear. This would be a different case, it seems to me, if the language that you cited said, once a resident was assigned to a sub-circuit, shall continue to be assigned to that sub-circuit for all purposes, comma, including retention in office. That's what you're arguing to us, but that seems to be inconsistent with the specific constitutional provision. Why should we interpret it that way? Well, because that is consistent with the point of the Act. So this wasn't an accident, Your Honor. This is not some sort of a jerry-rigged argument. The point of this Act, which is admitted by all parties, was to increase the voting power of racial minority populations through the design of judicial sub-circuits. That goal is admitted by all. Limiting retention elections to sub-circuits would, if not challenged, be a very powerful tool to increase the power of minority judicial representation. It just happens to be unconstitutional. The General Assembly very clearly went down the road of increasing racial minority representation in the judiciary, and they did so in a way that was blatantly unconstitutional. That's the first thing. It makes sense from the point of the law. The second thing is, we believe for all purposes means all purposes, and also is further defined by the exclusion of the language elsewhere in the Act. Those two things together, we think, make it very clear from a statutory interpretation, from a textualist perspective, that the removal of a phrase was intentional, must be read to be intentional. Doesn't that require us to assume that the General Assembly had no understanding of the constitutional retention provision and put in this goal of having retention in the sub-circuit only for the reasons you said? Let's assume that's correct. Despite the fact that the Constitution specifically provides circuit at large, I know legislative intent is often deemed a legal fiction, but surely they had some idea about this, didn't they? I would agree with you, Your Honor. This is very obviously unconstitutional, but there's no carve-out for obviously unconstitutional. We must then read it as constitutional. In this case also, there's a factual reason that may explain what you're talking about, Your Honor. This case, this law was passed at warp speed with very little public notice. Days passed between the release of the text of this law to the public and when it was passed. So it did not go through the usual process that would prevent possibly unconstitutional, obviously unconstitutional provisions from being included. We think it was passed at warp speed and they made this mistake and they did so inconsistent with their overall goal. But we do believe that this is obviously unconstitutional. It's hard to understand because it's so obvious, but it's right there in the text and it's consistent with the overall goal of the legislation. Go ahead. Very good. I'll move on to another. So that's one reason, right off the bat, this law can be struck down wholesale just based off of that piece, which is at the heart of the law alone and sent back to the General Assembly to do it right. Send it back to the General Assembly to do it right, go through the proper procedures and do this right. The second one is the elimination of at-large judgeships. So this is the first time, Your Honors, or the first appellate court in any case to consider whether or not the General Assembly can completely eliminate all at-large judgeships from a circuit. And this does not comport with Article VI. Article VI allows for circuit judges to be elected at-large and for circuit judges to also be from a division of a circuit for the purposes of a selection, a sub-circuit. And it's best to consider this fundamental constitutional question, which we believe is a question of first impression. From the standpoint of the first circuit judge, when the General Assembly is giving each circuit its first circuit judge, which it must do, must that first circuit judge, which could be the only circuit judge, be an at-large judge? That's our argument. The first circuit judge must be an at-large judge. The reason for it, and then additional circuit judges could be sub-circuit judges. That's what TICE stands for. That dealt with additional sub-circuit judges, but the first one has to be at-large. And why is that? The alternative, Your Honor, is absurd. If you have a sub-circuit internal to a circuit that then is allowed to elect the only circuit judge, be that sub-circuit a city, a neighborhood, a county within a multi-county circuit, you would have the complete elimination of voters from a circuit election. We don't have that. That's not what we're talking about. That's an extreme example. It's a necessary, logical inference from what they're requesting this court to allow. For example, one question for the state would be, could they assign all nine sub-circuit judges to the first sub-circuit? Could they assign all nine? Could they assign eight out of the nine to one sub-circuit? That will be answered when that case arises. But this case, Your Honor, that's true. That is a separate case, but it's the same exact argument. They're arguing they could eliminate all circuit judges, and then they're also arguing they could do either, eliminate all at-large judges, and then they could either do, in every case, at-large or sub-circuit. That's their fundamental, logical interpretation of Article VI. We're saying that constitutional interpretation fails at its base. It cannot be true because it would necessarily allow absurd results. The better argument is to conclude that the first judge in every circuit must be at-large, and then the rest may. What provides for that? Yes. The first judge in every circuit must be at-large. That's our argument, that the Constitution requires that, and that this law— Where does the Constitution require that? It would have to. Otherwise, the result would be the exclusion of whole sections of a circuit from possible judicial elections. So we would be reading that into the Constitution. It would be a reduction to absurdity argument, Your Honor. Their constitutional interpretation cannot be true because it would necessarily allow things that cannot happen under the Illinois Constitution, the exclusion of whole segments. And that's what's happening here. This is a question of degree, not a question of kind. The question of degree here is whether or not they can start to go down this road of only subcircuits. Now, if you require every circuit to have at least one at-large judge, they can still do all sorts of interesting things with subcircuits. They would have a lot of power, but at the base, every voter in every circuit would know they would be able to vote on at least one judge, that one at-large judge. Whether they have one or whether they have 15, they would have the fundamental right to vote on one circuit judge. Without that assurance, there is no guardrails for the General Assembly in its design of subcircuits, and they can start manipulating subcircuits in ways that we think are frankly hard to conceive of in our constitutional design, which has a fundamental requirement for one person, one vote, generally, and also rests upon the right of judicial elections. Circuit elections are fundamental to our constitutional design. That first judge has to be at-large. Otherwise, the possibilities are endless, and it's a brave new world that we think the General Assembly should not be allowed to go down. Again, they could do many things that they would like to do with subcircuit design, they just can't go as far as they did. That's our argument with relating to at-large judges. We need at least one, otherwise the results are absurd. And then finally, Your Honor, again, retention sufficient for striking down this law, elimination of all at-large judgeships sufficient for striking down this law. But the other piece is special legislation. The Supreme Court has consistently held that the Illinois Constitution prevents the passing of any special or local law when a general law is or can be made applicable, and this law is very clearly a local law aimed at Madison County. How do we know it's a local law aimed at Madison County? In some respects, Lake County, but primarily at Madison County. The voters in these two counties are the only counties in the state of Illinois, even though this affects many, many counties across the state of Illinois, where it's implemented immediately in 2022 rather than 2024. That's a local law. What is the reason for that? Also, Madison County is the only county, as far as we can tell, in Illinois history, where multiple vacancies of subcircuits are assigned all at once. Three to the first subcircuit, all at once. That's a local law aimed at Madison County. Is it your position that this statute would then have been constitutional if it had the same provisions but made it effective in 2024? It wouldn't have been subject to many of our special legislation arguments, Your Honor. For example, if it had waited until 2024, I think what would have happened is there would have been trailer bills that would have prevented some of these obvious... Well, it's this argument. So the special legislation prevents arbitrary distinctions without meaning. Arbitrary distinctions in the law. This is one law. This is not multiple laws passed over a period of time. This is one law that has a key distinction. Some counties have subcircuits implemented immediately. Other counties do not. What's the reason for that? Is it arbitrary? We can discern no reason for that, especially because the whole point of this law is to increase racial judicial representation, racial minority judicial representation. Well, why not do that for everybody in 2022? The reason for this, Your Honor, is actually just below the surface, just behind the veil of the legal arguments, is the practical argument. There were two vacancies up for election in 2022 that were previously certified by the Illinois State Supreme Court. This law is an attempt to reach into those elections and manipulate them. Now there are three. It just so happens that this law applied three judicial vacancies all at once to one subcircuit. This is not only an arbitrary distinction, but this is subject to strict scrutiny. This has racial categories at its heart, and the state is trying to avoid having to pass strict scrutiny in this case when it impinges on the fundamental right to vote. And it also has racial categories at its heart. We believe it has to go back to the drawing board. And if it wants to go down this path of increasing racial minority representation in the judiciary, it has to do so in a way that satisfies strict scrutiny. And they haven't even tried. They just they insist that they don't have to provide for a compelling justification, that they don't have to make sure it's narrowly tailored, that rational justice review is sufficient. And we think it would be a bridge too far that in the design of judicial categories and judicial boundaries, that you could use racial categories in the design of those boundaries, but not have to pass strict scrutiny. I have another question. I want to make sure my understanding is correct. Yes, Your Honor. Is it correct that there are some Lake County precincts that are listed in this act in both Lake County judicial subcircuit and the McHenry County judicial subcircuit? Your Honor, this is Phil Lukians. And I think we got about three minutes left. And that's an argument I made. And it is correct that they are, I think that has been admitted at the trial court. Everybody admitted that there are subcircuits or there are precincts in two different subcircuits, two different counties. Okay, well, the interesting to ask the Attorney General about that. You argued about the free and fair. Is that right? Yes, Your Honor. You also argued that the act violates some requirement of substantially equal population. I'm not sure I understand that argument. That is, if this is the act which creates the new districts, and it says they shall be substantially equal, but they're not, let's assume, that means the act is somehow internally not consistent. What's the effect of that? I mean, are you arguing that, therefore, it's invalid? Typically, when we're talking about this, an act which is in violation of something, it's like in violation of the, let's say, the state constitution, which would render it invalid. But if you're even correct, I'm not sure I understand what this means. If it's in violation with its own, an act is not internally consistent. Yeah, you're correct. The act is not internally consistent. We would say that that avoids the act. I know you say that, but what's the precedent for saying that? I don't recall it. I don't have a case that says that, Your Honor. I have to admit that. I think what's more important is the free and equal election argument that you raise. Well, I want to ask you about that, too. You cite, for instance, the Lee-Woon voters case out of Pennsylvania. But as the Pennsylvania Supreme Court made clear, that was a partisan gerrymandering case, which that court said that looted the votes of those prior elections. And essentially what the court said is that gerrymandering was unconstitutional under the free and fair election section of the Pennsylvania Constitution. In the Moran case from Illinois, you cite, there was a discussion about the free and fair aspect, which said shall be free to the end, free and equal to the end, and that each voter will have the privilege of casting his ballot without for us to constrain, and that his vote shall be substantially equal in influence of that of every other qualified voter. Seems to me that's essentially what we're doing here. Namely, each voter who can vote for judge, each vote counts. And the cases you cite are gerrymandering cases. The last one I want to mention. Well, two things. I'll give you a quick opportunity to respond because I think this is important. Yeah, let me, let me, let me, let me finish here with two points. I apologize. I don't believe there's ever been a successful case brought in the Illinois Constitution, citing the free and fair election on the basis of a claim that it's gerrymandered. Indeed, here in Central Illinois, we have I think what has been deemed the most gerrymandered congressional district in the entire nation. And that's standing and we have no issue about that based on free and fair. And the other aspect of it I want you to comment on the Supreme Court of Illinois in 1990, the Fumarolo case said this because the equal protection guarantees in Article One, Section Two of the Illinois Constitution, and the free and equal requirements of Article Three, the one you cite, of the Constitution of Illinois are in effect those of the equal protection clause of the 14th Amendment. Our conclusion is the claim of a federal violation will dispose of the claim of a violation of the state constitution as well. The significance of that counsel is that the U.S. Supreme Court recently rejected the claim that political gerrymandering somehow is a constitutional violation. Doesn't all this together mean that the Pennsylvania Supreme Court is viewing its own language, free and fair, as a bar to gerrymandering having nothing to do with the issues in this case? Okay, let me, there's a few questions there and if I don't answer all of them, please, you know, don't hesitate to kick me back to it. We do raise political gerrymandering as a claim. We do say that the choices here that the legislature made were based on political gerrymandering and that the reason three circuits, three subcircuits have twice the number of judges, just because they're all heavily Democratic. That is a claim we bring. That you're correct, that claim has not been decided in Illinois. The free and equal election clause, the Moran case, is from 1934, somewhere in that time frame. These are new claims that have been raised throughout the country under substantially if not identical free and equal election clauses, and we are raising a political gerrymandering claim that this is politically gerrymandered. And that the free and equal election clause does not allow that. You are correct, the United States Supreme Court has, however, said that political gerrymandering claims are not justiciable under the United States Constitution. We agree. I mean, I don't agree, but we understand that's the law. Okay, so you have a few different things here. You also have the Fumarillo case which was talking about equal protection, and as it relates to certain things. We know, and I'm sure Mr. Siegel and Mr. Vaught will bring up the fact that equal protection clause does not apply to judiciary. Understood. That case law has been decided by the United States Supreme Court as well. The free and equal election clause is a separate clause. We have an equal protection clause in our Constitution. We also have a free and equal election clause in our Constitution. Those are two different clauses meant to cover two different things. And the free and equal election clause says all, quote, all elections shall be free and equal. I understand the free means one thing and the AG wants to point to that in their brief. That's not what we're suggesting as it relates to equal population. Equal says that each voters vote shall be equal in effect to every other electors. Why is it not? It's not because if I live in district one, subcircuit one, I get two votes. I get to vote for two judges. If I'm in subcircuit four or subcircuit nine, I get one. So my vote is not as powerful as anybody in another circuit. But these are not elected, these are not representative positions. Correct. Each person who votes for a judge, that vote counts. And your claim is it's gerrymandered in that we should have the same number of judges available, but, you know, I'm not sure, you know, even if it were a remap question for a legislative district. We don't have gerrymandering that has ever been deemed by a court to be unconstitutional in this state. We'd be the first, I guess, but it's even less of a strong argument when talking about judicial circumstances. Let me respond to that. First of all, the Supreme Court in, I want to say in the 91 decision and I've litigated a lot of them so I can't remember the years and I apologize. But the Supreme Court in the 91 decision did, did look at the politics and said, Hey, wait a second. If we had certain information we would look at this, we would look at this differently as a political gerrymandering claim. They did. That's the only Supreme Court case. I want to say it's Ingeman's in but I may have the wrong cleanup. The other thing is, I want to be very careful we cannot be confusing equal protection which deals with representation, I agree, representate judges under the United States Supreme Court are not representatives. That's not what I'm talking about. That has to do with equal protection each person being given the same protection of each other. Here we're talking about votes, and it's all elections, all elections shall be free and equal it's not talking about representation. It's talking about the votes shall be free and equal and here we have votes not being equal. That's all your time is up. I appreciate the presiding judge giving an opportunity to respond to my question but I think you have. I have. Thank you. I appreciate it. Mr Craney you have been disadvantaged, but it was your choice with your colleagues to divide your time. I'm going to let you have a minute to tell us what your most your strongest point is. Well, thank you, Judge, I will take that time to make I guess the following strongest point. In summary, as counsel for my co appellant said, all means all. And when a section of this law says that in the Third Circuit judges assigned to a judicial sub circuit are assigned to that sub circuit for all purposes. That must mean what it says on its face. We've cited in our reply brief. The obvious law, O'Brien versus white. It says it's an elementary rule of construction of a statute that the attention of the legislature must be given must be determined from, from what they've written, and that courts cannot. They must invalidate a statute that's unconstitutional on its face. What the police are doing in this case is asking you to rewrite the statute or to infer into it a constitutional meaning when it's clear from the fact that they tried to pass a trailer bill that they know it has to be rewritten. So, it. The other another justice asked, Why should we infer into the statute, meaning that would cause it to be clearly unconstitutional. The answer is that that's, it's 180 degrees the other way. The appellees are asking you to infer into a clearly unconstitutional statute, a reading of the word all which implies some sort of exception to make it constitutional. The retention piece alone makes the statute unconstitutional on his face, it must be sent back to be fixed. That's our council you refer to all but you don't connect it to what it applies and that is purposes. All purposes, meaning all duties functions responsibilities. It's neither a duty function or responsibility of the judge to be retained. That may be a process by which they get there or they get to remain there, but it's not a purpose. Is there any relevance to the connection of all to purpose. I believe that the word purpose has a fairly broad meaning and definition I, I mean I, I strain to understand how for all purposes wouldn't wouldn't encompass wouldn't encompass a retention election, and that's, and you must add into this as as Mr. Haynes already pointed out fairly eloquently. Every other section of the sections you know corresponds to different counties, every other section, reflecting different counties, specifically has language that was removed with respect to the third district. Specifically, that explicitly allowed for retention circuit wide that was removed here so the intent is clear for a couple of different reasons, in addition to the fact that it says for all purposes. You can read it in conjunction as we all know we should with other sections and the explicit language was removed so it's clear the intent here was to take away in the third circuit, the abilities for judges to run for retention circuit wide. Thank you, Council. Thank you, Council will hear from who will we hear from on rebuttal. We'll do the same thing on rebuttal Your Honor and I will be much better about my time management. Very good. Mr. What do you intend to go first. Yes, Your Honor. Proceed. May it please the court I'm Adam bottom half of intervening defendants Welch and Harmon. I want to address three issues before I turn it over to the council for the governor. The first issue I want to address is the unique jurisdictional problem this case presented. Second, I want to discuss the General Assembly's plenary power to determine the number of circuit judges and their manner of selection. And third I want to address the issues with the main McHenry County precincts. First on jurisdiction. This case is unique in that on January 11 2022 the Illinois Supreme Court a few days after the sub circuit act was that was enacted into law issued an order and the order did two things. First, the act requested that the Supreme Court a lot to the circuit the circuit positions into sub circuits the order did that. It then took an additional step and stated that the substance of these positions were now recertified as sub circuit positions and McHenry County and Lake County. It also stated that it did not affect any previously certified. Previously certified vacancies under the Illinois Constitution, the Illinois election code judicial vacancies are certified in a number of ways. If there's a retirement, a death resignation or forfeiture in office the chief justice is to certify 100 days before primary. If there's a removal from office than that is for the secretary of the courts commission to certify the vacancy. If a judge does not file intention to run for retention with the Secretary of State in the time allowed by the Constitution and the Secretary of State vacancy, and a new positions are created the state board of elections certifies the vacancy. Here, however, we have an order from the Supreme Court that was entered by the court and entered by the clerk of the Supreme Court. It previously the plaintiffs that tried to enjoin the clerk of the Supreme Court to enter a new order research by in the vacancies as at large, they then voluntarily dismissed it. We still maintain in the court below that the court lack jurisdiction because it couldn't enter an order that would be able to contradict the Supreme Court's order on the certification. How's that jurisdiction. Well, because your honor what plaintiffs are now asking for us. Justice ability, as opposed jurisdiction. I thought the circuit courts have jurisdiction over everything. Well the courts have original jurisdiction that has to be able to effectuate an order on the declaratory judgment act, the court can state that acts constitutional within something so words matter isn't that justice ability that jurisdiction. Yes, Your Honor. Yes, that is just disability. It's an advisory opinion standing, those political questions go to just disability. And you're not arguing it. Well, I think the court black jurisdiction to enter an order that would contradict the Supreme Court's order. And if the court doesn't have jurisdiction to enter that order it would render any opinion related to the unconstitutionality of the act as an advisory opinion, because I have found no case law which states that a lower court can answer an order to contradict the order of the Supreme Court. So here in this case because there was the order of the Supreme Court, certain court lack of jurisdiction to enter an order to the State Board of Elections telling them to recertify the vacancies is at large, whether or not it could address an advisory opinion would go to just disability. So I guess that would be the distinction between just disability and jurisdiction. I would next like to turn to a question the plenary power under Article six the legislature has broad authority to decide the number of circuit judges, and the manner of their selection of these case determine that there is a and within Article six And then in the bridges case the Supreme Court stated that the court has the General Assembly has plenary power to determine the number of the judges in a circuit, including whether or not they want to do it by population or not they can determine whatever reason they have for deciding how many judges are going to be in a circuit. And so in this case we have taken the General Assembly took at large seats, move them to sub circuit seats which other fees will be allowed to do, and they have, you know, address the number of circuit positions into those sub circuits which other bridges, they would be allowed to do so is my understanding correct as I asked the council for the appellants that this act places precincts from Lake County in both the Lake County judicial subcircuit and a McHenry County judicial subcircuit. So what it does is in two places it refers to precinct council, see that's one of those strange questions that calls for a yes or no answer. And if you have an explanation that should come after you've answered yes or no. Yes, the act does have McHenry County precincts within a Lake County sub circuit. So now explain how that works and what we should do with it. Yeah, thank you. And the McHenry County precincts are also in a McHenry County sub circuit, so they're actually listed twice. So here it is what we refer to as a Scribner's error. Under the Constitution circuits have to be maintained of whole counties, you can't take part of a county and put it into a sub circuit position of a different circuits. Currently, I don't believe there's any there's no evidence that the McHenry County clerk has taken any action related to trying to hold an election in McHenry County for the Lake County sub circuit. So as of right now there is no enforcement of the provision affected legitimacy and validity of the entire. I don't think that it affects the legitimacy of the entire the act I think the court could look at it and state that clearly that is not part of the act to can sever it I mean they're not part of should not have been part of the Lake County sub circuit and can sever that out of the act, it wouldn't be how do we do that what's what's our authority to sever it out of the act. Well, I think first, there's a standing problem because nobody from McHenry County, who is here to state that those precincts create a problem either in the McHenry County clerk or McHenry County voter. The only person here is a Lake County Senator McCarthy. He can't complain about a voter standing for voters in McHenry County or for the McHenry County clerk, so I think the court could address that issue first. Other people challenging the act in various regards and the act. If this. I suppose my question is, does this provision render the act invalid because it's not functional as now stands. No, because I don't think that there's any. It is not not functional. As I say that there's no evidence that the McHenry County clerk has tried to hold an election on Lake County precincts, I'm not sure what sort of evidence that is required the act says these precincts are supposed to be in one county. Lake County precincts in McHenry County for the McHenry County judicial sub circuit. What evidence are you requiring and why would that matter on our assessment of whether this is legitimate. I think there would need to be votes that would try to be counted towards the Lake County sub circuit that's an issue the challenges to the Lake County sub circuits here, not to McHenry County. So the statute provided we're going to have Cook County precincts in the McHenry County sub circuit. No problem, because we haven't had any complaint yet for the McHenry County circuit court. I would, yes, I would say that's true until there's such until somebody comes with standing with a complaint that the act is causing some harm. I don't think that it's right for adjudication. But just, well, what are the actors before us, and claims challenging. We just, what's your position we just ignore it. Your Honor, for lack of a better way of putting it, yes, I think that would be their fair way to do it I think clearly that anybody looking at it would realize McHenry County precincts shouldn't be in a Lake County sub circuit. I think the, the act shows that those precincts are also placed in a McHenry County sub circuit. So there was just a clear Scribner error I mean we're talking, you know, this isn't language these are numbers that are put in and you know it could be glossed over somebody doesn't realize that that's what had happened with the first to make county precincts, it's not just numbers. That's correct. But yes, I think what's the standard for deeming something Scribner's error and ignoring it regarding statutory interpretation. Well, I did not find under Illinois law, what would be, you know, a doctrine of absurdity that you know something is obviously not intended to be a part of and therefore won't be followed but it's been used in other courts throughout the country I guess that would be what I would suggest would be applied but as I said I did not find an Illinois case that applies that doctrine by that name. So, Your Honor I'm happy to continue to answer any questions I also don't want to take Mr Siegel's time if it's on me. So he doesn't want you to take his time either. I see no further questions. Thank you, Your Honor. Good morning and may it please the court counsel, I'm Assistant Attorney General Evan Siegel on behalf of Governor JB Pritzker, and I want to start this morning briefly with standing, Your Honors, and make two points on this. Because the county cannot sue a state under the doctrine of legislative supremacy, it's a creation of the state. I heard the state's attorney cite a case called McHenry County versus Raul and I think he said it's in the district court. Well, standing under federal law is not standing under Illinois law and legislative supremacy concept would not be implicated there. So, with Madison County out of this case on that doctrine, just to make clear what's on the table, that eliminates one entire claim unique to Madison County. It's allegations about administrative challenges and compliance difficulties presented by the act, which of course we know leads to an election in six days. Secondly, briefly on this, the individual plaintiffs have standing to seek relief, only for harms that currently affect them, and that's quite limited. Now moving to Article VI and the merits, this court can and should decide this case in the governor's favor solely on the basis of the General Assembly's plenary power under the Article VI of the Illinois Constitution to organize the circuit courts. That is to say that this court concludes that the act satisfies Article VI, then the alternative theories put forth by the plaintiffs, their special legislation and separation of powers arguments, offer no path to recovery. The court need not go to those arguments if it addresses Article VI in our favor. That makes Article VI, Section 7 really the centerpiece of this appeal, and the act easily satisfies it. I want to make three key points about Article VI, Section 7. My co-counsel covered this briefly a moment ago, but let me elaborate. The broad power stems from several sources, and in the main, the Constitution enables the General Assembly to enact any legislation not expressly prohibited by the Constitution. That differs from the federal Constitution, which is, of course, a limitation on the federal government from powers reserved to the states. And further, Article VI, Section 7 explicitly gives the General Assembly exclusive power to establish circuits and sub-circuits. It's specifically authorized, for instance, under Article VI, Section 7a, to provide for the division of a circuit court for the purpose of selection of circuit judges, and we know that division in this context means a sub-circuit. I think everyone here agrees that the General Assembly can create sub-circuits. I disagree with the state's attorney's point, however, which he conceded was an absurd one. And as you said, Justice Knapp, we're not here with this statute. It doesn't go that far, that the first appointment, that a first appointment must be an at-large judge, and then only then can there be sub-circuits. The point about creating a sub-circuit that's confined to a neighborhood or a city or a political grouping, that would disenfranchise all other voters in that circuit if voters outside the sub-circuit could not vote. And that is a free and equal election problem under the Illinois Constitution. That is an example of a disenfranchisement that's not permissible in a correct comparison situation. But, you know, if a circuit is a pizza pie and you slice it in half, you automatically have two sub-circuits. You can't divide a circuit and end up with one sub-circuit. It's kind of a ridiculous hypothetical. So let me just focus again on the language of Article VI, Section 7. It states that unless otherwise provided by law, there should be at least one circuit judge from each county. And that phrase, unless otherwise provided by law, it appears three times in Article VI and only one other time in the Illinois Constitution. It's there to reemphasize the point that I just mentioned earlier, that the General Assembly has broad powers in this area except where explicitly forbidden by the Constitution. So, given these fundamental abilities, the General Assembly has expansive ability. We know from the Bridges case that the General Assembly can decide the configuration of circuits, their location, or the ratio of judges to population in a sub-circuit. Counsel, I have two questions for you. The first is regarding the question I asked Mr. Vaught about the strange statutory provision, the precincts from Lake County being in McHenry County sub-circuit. What is your suggestion and what this court should deal with that and how it affects the validity of the act? I agree with what Mr. Vaught said about severability if the court concludes that this is truly a problem that arises to a constitution. Is there a severability section in the act? I do not have one to cite for you, Your Honor. This is an argument that was made by the appellants and I would expect counsel, if there was a severability clause, to cite it. If you're now arguing it, I'm inferring that there isn't one. Well, I could supply you, I could look for that follow-up memo with leave of court to make sure that we haven't missed it. But I want to come back to something you said, Justice Stegman, earlier about the internal inconsistency argument on the substantially similar sub-circuit. What is this claim tethered to? This is not a constitutional violation. And that's not my question. I want to go back to the question of what do we do with this strange provision? How should that affect our thinking? And if there is no severability clause, and if we find none, what do we then do? Just disregard it? I think that's correct. And I think there's also a practical consideration here. I'm not aware of any complaints from candidates in Lake County. Counsel may correct me on rebuttal. Or in McHenry County, there's no confusion about where these judicial candidates are running. And the election board, the day after the election, and whatever other local authorities are involved, will certify a winner. And there is not going to be any winner whose sub-circuit spans two circuits, because just as in the example with retention, the provision here cannot violate the Constitution. The Constitution, as Mr. Vaught says, does not allow a sub-circuit to span two counties. And the Constitution, by the same token, doesn't allow a sub-circuit judge to run for retention just in that sub-circuit. Has anyone bothered to look at the ballot? I would assume that the ballots in Lake County are available to voters. Early voters, write-in voters, and voters that want to know what they're going to be faced with when they go to the polls. Has anybody even bothered to look at those? Well, early voting has begun, Your Honor. Let's go back. Nobody is nodding either way, which means nobody on this screen has bothered to look at the ballot. I have not seen the ballot, Your Honors. Anybody else? Okay, you may proceed. Here's my second question I have for you. I challenge Mr. Lutkehans, if I'm pronouncing that correctly, on his claim about the cases he cited. And my assessment is that these cases were based upon state Supreme Courts concluding gerrymandering. Gerrymandering was unconstitutional under their state constitutions, and that there is no such case holding that in Illinois. As a representative of the governor or attorney general or both, do you agree? I am not sure that I agree, Your Honor. I think Mr. Lutkehans cited a case from 1935 involving congressional districts. An important distinction, we don't have that here, where the reviewing court held that, I'm sorry, state legislative districts, that they were wildly out of whack, like to the tune of 10,000 to one voter ratio disproportion. That's the only case that I'm aware of where a free and equal elections claim succeeded. But the citation of the other jurisdiction case law should be disregarded by this court because, as Your Honors pointed out, those are cases that are distinguishable on two grounds. They're from out of state, and he's also cited federal case law as well involving congressional elections. And secondly, they do not involve judicial elections, which are separate and apart. So let me go back. I want to get a specific answer to my question. My question was, as a representative of the governor and attorney general, do you agree that the fair and free election provision of the Illinois Constitution does not constitute a prohibition on gerrymandering in Illinois? I do agree with that, Your Honor. I agree. The act does not violate the free and equal election clause of the Illinois Constitution, and I want to set straight why that's so. That provision requires that similar voters be treated similarly. It does not mean, as mentioned earlier, that every judicial sub-circuit, every circuit, or even a circuit that's an entire county, contain the exact same number of voters. We know that different circuits have different number of voters. Lake County has 687,000 residents. Mr. Haynes County is also in the top 10. There are circuits downstate, like the Second Circuit, that have one-fourth that population. How can it be that the free and equal election clause requires equality of sub-circuit population in Lake County, in the 19th Judicial Circuit, but we have counties that are widely disparate? So, that argument does not hold, and the Quinn case is entirely on point, because I see that my time is up. I'm going to let you finish that point, and you can make another point, because I gave additional time to the appellants, but be brief, please. Thank you, Justice Connett. Quinn is dispositive here. What Senator McConkie is asking for is just what the plaintiffs in Quinn asked for. He wants an additional judgeship vote in his sub-circuit, just as the Quinn plaintiffs wanted to be able to vote for the Chicago Board of Education. That's not what the free and equal elections clause provides. It says instead that once there is an election in a particular jurisdiction, that every vote must count equally. And that means that the comparison is not between Senator McConkie's vote and his neighbors in the next sub-circuit. It's within his sub-circuit. It cannot be that the comparison is between two disparate jurisdictions, because where does that end? Are we going to compare Senator McConkie's voter-to-judge ratio to somebody in the second judicial circuit, where there are 14 elected judges for just 187,000 people? And Lake County has around the same number of elected judges and four times the number. So the Constitution, as we've stated in our brief, allows for different sized populations in sub-circuits. Thank you for allowing me to go beyond my time, Your Honors. If you have no further question, the governor asks that you affirm the judgment of the circuit court. I see no further questions. We'll hear rebuttal. Your Honor, Phil Lueke, once again, if acceptable, and I'll try and be brief. I'll hit these real quick. All the cases that regarding the Supreme Court order, all the cases that the defendants cite are internal. They're cases where the appellate court said something and went back down to the lower court. It's not something like this. They were actual decisions. A lot of times there's mandates issued. Nothing like this has ever been really a ministerial order saying that somehow affects nobody could ever appeal the underlying litigation, the underlying election law. That's just kind of silly. And you're right, we don't have any cases on it, but neither do the plaintiffs, because Philip Morris doesn't say that either. There is no severability provision here. And we would cite to you as we cite in our brief, People v. Garner, where the court is not allowed, the court invalidated an act because the court may not correct the legislature's mistake. The answer is to strike it, let the General Assembly fix, and they can go forward. You have two different provisions of the Constitution. I understand the plenary powers, but the reality of it is the constitutional articles have to be read in compliance with each other. There's not one that trumps the other. There's no such thing. Finally, other jurisdictions, yeah, we cited other jurisdictions, no doubt about it. We're not saying those are dispositive, but they are persuasive and we do think we have the right to go to trial on those cases and shouldn't be ruled on a motion to dismiss. We should actually have a full record. And I don't know what federal case law Mr. Siegel was talking about, but I don't remember citing any federal case law on free and equal. Quinn case real quick, completely different issue. The court says, you don't have to give an election for a local school district. And I agree, but once you do decide to have an election, they have to be equal. And this concept that they have to be equal within the same subcircuit, that makes no sense because Moran goes the exact opposite and says District 1 and District 2 have two They don't say everybody in District one gets the same election. So you're good. His statement completely is refuted by Moran, and I will let Mr Carney go next. I will just simply say that What struck me was the appellee's counsel asking the court to, I wrote it down, ignore it when it comes to the provision that improperly assigns precincts to different sub districts. The bottom line is you have a statute. The statute is unconstitutional for a variety of reasons. We've joined in all the other appellate's arguments, but it clearly, at least in one section, it clearly unconstitutionally requires retention to occur within a subcircuit. They've acknowledged that in their briefs. They ask you to read it a different way, to ignore it. They ask you to ignore the provision about subcircuits. There is no severability clause in the statute. So on its face, the General Assembly, on the one hand, wants the courts to respect their supremacy and their plenary authority to write these statutes. But then on the other hand, they want this court to legislate by selectively ignoring certain things when there is no severability provision. The statute is flawed. It was rushed through. It should be stricken down and sent back for them to rethink. Thank you. Mr. Haney? Your Honor, I believe I have one minute. I would just like to reiterate what Mr. Craney said. The things that this court is being asked to ignore are starting to pile up. There's no severability clause, the retention language, asking this court to ignore it, the relation to the at-large judges and Article VI. Article VI only mentions at-large elections, asking you to read it in a different way that allows a different conclusion. And just on a quick point about plenary authority, the plenary authority argument comes solely from Bridges. Bridges only relates to how you can eliminate creation or elimination of judicial districts. You can eliminate judicial districts, you can eliminate vacancy, but you cannot manipulate an ongoing election, which is exactly what happened here. There was an ongoing election, and this was an insertion of the General Assembly into the inner workings of an ongoing election. Nothing in Bridges allows for such a thing. Nothing in Bridges envisions such a thing. And if it's allowed to go forward, the implications for future actions by the General Assembly are profound. If this court allows there to be the elimination of all at-large judges in this circuit, there may be the elimination of all at-large judges throughout the state of Illinois. It's the same exact principle. We're asking this court to put a stop to it now before it gets out of hand. We would ask this court to strike down the law and send it back to the General Assembly to do it right and to do it constitutionally. I appreciate the time, Your Honor. Thank you, counsel. We'll take the matter under advisement. Thank you all for your arguments.